## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Darwin Strong,<br><br>     Plaintiff,<br><br>v.<br><br>United Payment Center Inc.,<br><br>     Defendant. | Case No.: 0:21-cv-1013<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## <u>INTRODUCTION</u>

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. This action arises out of violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the Electronic Fund Transfer Act ("EFTA") 15 U.S.C. §§ 1693 *et seq*. and its implementing Regulation E, and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 (RFDCPA), by Defendant and its collection agents in their illegal efforts

to collect a consumer debt from Plaintiff.

3.  This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

4.  This action further arises out of violations of the Drivers Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721-2725 *et seq.*, by Defendant and its collection agents in their illegal use of an internet database containing motor vehicle information to collect a consumer debt from Plaintiff.

## **JURISDICTION**

5.  Jurisdiction of this Court arises under U.S.C. § 1692k(d) and 18 U.S.C. § 2724(a), 15 U.S.C. § 1693m, 28 U.S.C. § 1367 for pendent state law claims, and common law.

6.  Venue is proper because the acts and transactions occurred here, Plaintiff resides in Minnesota, and Defendant transacts business here.

7.  Defendant has transacted business within the State of Minnesota by attempting to collect a debt from Plaintiff via the telephone and through the use of email while Plaintiff was located within and permanently residing within the State of Minnesota.

8.  Defendant has transacted business within the State of Minnesota by operating a collection agency, making collection calls into Minnesota, and directing debt collection activities to Minnesota.

## PARTIES

9.    Plaintiff Darwin Strong (hereinafter "Plaintiff") is a natural person who resides in the County of Renville, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) or a person affected by a violation of that law, and is a "debtor" as that term is defined by California Civil Code § 1788.2(h).

10.   Plaintiff has suffered an injury in fact that is fairly traceable to each Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

11.   Defendant United Payment Center Inc. ( "Defendant") is a foreign corporation formed under California law and a collection agency unlicensed in Minnesota, operating from a principal executive office address of 13715 Frazier Street, Baldwin Park, California 91706, with its principal business office of Defendant is 222 North Mountain Avenue, Suite 215, Upland, California 91786.

12.   Defendant's Registered Agent is Carmen Hernandez, located at 1180 Philadelphia Street, Unit 12, Pomona, California 91766.

13.   Defendant uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

14.   Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and is a "debt collector" as that term is defined by California Civil Code § 1788.2(c).

15.   Defendant is a person covered by the requirements of by EFTA and its implementing Regulation E, 12 C.F.R. 1005.2.

16.    According to the City of Upland, California, Defendant holds a business license (Account # 00919824) to conduct business at 222 North Mountain Avenue, Suite 215, Upland, California 91786, telephone number 909-608-7130.

17.    Defendant and its employees and agents directly and indirectly participated in the unlawful efforts to collect an alleged debt from Plaintiff that are more further described in this complaint.

18.    Defendant also operates under the pseudonym "Wineland & Associates" from a coworking office space located at 6080 Center Drive, Los Angeles, California 90045 and using a telephone number of (866) 300-0776.

## FACTUAL ALLEGATIONS

19.    Sometime around 2000, Plaintiff allegedly incurred a financial obligation that was, namely, a personal credit card with Wells Fargo Bank, that was for personal, family and household purposes and is a debt as that term is defined under 15 U.S.C. § 1692a(5) ("debt").

20.    Plaintiff disputes this alleged debt, the final bill on this account, and any remaining balance, and is represented by the undersigned counsel both with respect to this debt and to the claims made herein.

21.    This alleged debt was beyond the statute of limitations in Minnesota, as it had been approximately 20 years since Plaintiff had made a payment when a payment was due and Plaintiff has lived continuously and openly within the state of Minnesota continuously since before 2000.

22. These financial obligations were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person and were therefore "debt(s)" as that term is defined by California Civil Code §1788.2(d), and a "consumer debt" as that term is defined by California Civil Code §1788.2(f).

23. Plaintiff is informed and believes, and thereon alleges, that at all times relevant Defendant conducted collection business in both the State of California and the State of Minnesota.

24. Sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendant for collection from Plaintiff.

### *Defendant's Illegal Collection Conduct*

25. Sometime on or around August 14, 2020, Defendant contacted Plaintiff in an attempt to collect this stale debt by telephone and/or mail to his home in Minnesota.

26. During this initial communication, Defendant's collection employee demanded payment for this alleged consumer debt from Plaintiff, which was a "communication" in an effort to collect a debt as that term is defined by the FDCPA. 15 U.S.C. § 1692a(2).

27. During the course of the collection communication with Defendant, Plaintiff agreed to pay off this alleged debt in the amount of $6,401.81 in monthly installments, beginning with an initial payment of $640.00, followed by monthly payments thereafter of approximately $240.07.

28. Between August 17, 2020, and December 17, 2020, Plaintiff made monthly payments on this debt based upon this payoff schedule.

29.   Plaintiff was induced and coerced into agreeing to this payoff schedule because Defendant's collection agent repeatedly and falsely threatened to sue him for this alleged debt, despite the fact that this debt was stale and beyond the contract statute of limitations.

30.   Defendant's collection agents also threatened to make Plaintiff's wife pay this debt, despite the fact that she was not legally responsible for it at any time.

31.   Plaintiff was scared, traumatized, and intimidated by the threatening debt collection tactics employed by Defendant.

32.   It was a false and deceptive debt collection practice for Defendant to fail to inform Plaintiff that this debt was beyond the applicable six-year statute of limitations in Minnesota for contract debts, and therefore uncollectible by legal action. Minn.Stat.§541.053.

33.   It was a false and deceptive debt collection practice for Defendant to suggest to Plaintiff that Plaintiff had any obligation, legal or otherwise, to pay this debt.

34.   It was a harassing, oppressive and abusive debt collection practice for Defendant to represent that it could collect this debt from Plaintiff beyond the applicable Minnesota statute of limitations.

35.   Moreover, it was a false and deceptive consumer debt collection practice for Defendant's debt collection employee to render legal advice to Plaintiff, especially erroneous legal advice about the legal status of this debt.

36.   The above-described communications and conduct from Defendant to Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited

to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), 1692e(5), 1692e(7), 1692e(9), 1692e(10), 1692f, and 1692f(1), amongst others.

37.   The above-described communications and conduct from Defendant to Plaintiff also violated California Civil Code §§1788.10(b), 1788.10(e), and 1788.10(f).

38.   Because the above-described conduct within this section violated the FDCPA, it also violated California Civil Code §1788.17.

### *Failure to Provide Required Notices Under the FDCPA*

39.   Defendant failed to provide Plaintiff with the notices required by 15 U.S.C. § 1692g within five days of its initial communications with Plaintiff.

40.   The failure to provide these notices by Defendant to Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

41.   The above-described communications and conduct from Defendant to Plaintiff also violated California Civil Code §§1788.10(b), 1788.10(e), and 1788.10(f).

42.   Because the above-described conduct within this section violated the FDCPA, it also violated California Civil Code §1788.17.

### *Illegal Collection Letter of August 14, 2020*

43.   On or about August 14, 2020, Defendant sent Plaintiff a collection letter in an effort to collect this debt. A true and correct copy of the August 14, 2020 collection letter from Defendant appears below, with redactions in **red.**

DocuSign Envelope ID: ███████████



*6080 Center Dr, Los Angeles, California 90045*
*Contact: (866) 300-0776*

**PERSONAL & CONFIDENTIAL**                                                8/14/20

DARWIN STRONG
██████████████

|        | Re: | Darwin Strong:          | xxx-xx-████    |
|--------|-----|-------------------------|----------------|
|        |     | Case No.:               | 2020-112999    |
|        |     | Original Creditor:      | Wells Fargo    |
|        |     | Original Account No.:   | ███████        |
|        |     | Amount due:             | $6,401.81      |

Dear Mr. Strong:

    Please be advised that this firm represents the current lender/creditor of your account to whom you are indebted in the amount of $6,401.81. Currently, the balance in full is overdue and payable; thus far you've given us no other option but to assume you've refused payment.

    Today, our firm is willing to stipulate to stop any action provided that you pay $640.00 on 8/14/20 and $240.07 per month until the total balance is paid in full. To accept this offer and execute this agreement you must contact our office and secure your payments via debit/credit card.

    Upon successful clearance of the amount due, our client will notify the proper credit agencies that the debt is paid as agreed, thus releasing any claim, interest, or liability. Conversely, if the full amount is not paid timely, our client may have a cause of action to pursue further damages and any applicable cost in collection of the debt.

Sincerely,

John Ramirez II
Ext. 218
Litigation

DocuSigned by:


*This communication is from a debt collector and any information obtained will be used for that purpose. The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.*

1

44.    The collection letter states in pertinent part:

> **Please be advised that this firm represents** the current lender/creditor of your account to whom you are indebted in the amount of $6,401.81. Currently, the balance in full is overdue and payable; thus far you've given us no other option but to assume you've refused payment.
>
> Today, **our firm is willing to stipulate to stop any action** provided that you pay $640.00 on 8/14/20 and $240.07 per month until the total balance is paid in full. **To accept this offer and execute this agreement** you must contact our office and secure your payments via debit/credit card.
>
> Upon successful clearance of the amount due, **our client will notify the proper credit agencies that the debt is paid as agreed, thus releasing any claim, interest, or liability.** Conversely, if the full amount is not paid timely, **our client may have a cause of action to pursue further damages and any applicable cost in collection of the debt**.
>
> Sincerely,
>
> John Ramirez II
> Ext. 218
> **Litigation**
>
> This communication is from a debt collector and any information obtained will be used for that purpose. The content of this email is confidential and intended for the recipient specified in message only. **It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender.** If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

(Bold underline added).

45.    This collection letter from Defendant violates the FDCPA and Minnesota law in numerous respects, in that it falsely and deceptively suggests:

- that Defendant is a law firm;

- that Defendant is representing a legal client;

- that Defendant has a right to bring a legal action;

- that Defendant has a right to report this alleged debt to credit reporting agencies;

- that Defendant has the right to engage in the practice of law;

- that Defendant can draft binding legal agreements;

- that Defendant has the right to threaten further legal action;

- that Defendant has the right to render legal opinions;

- that Defendant has the right to pursue further damages;

- that Defendant has the right to assess the costs of collection;

- and, the Plaintiff is prohibited from communicating with others about Defendant's illegal collection communications.

46.    The collection letter from Defendant also contains Plaintiff's Social Security Number and a fully-unredacted credit card number from Wells Fargo Bank, along with a "case number" suggestive that legal action may have already been filed against Plaintiff by Defendant.

*Defendant's Unlicensed Collection Activity in the State of Minnesota*

47.    A check with the Minnesota Department of Commerce shows that Defendant is not licensed to collect debts within the State of Minnesota, either under its actual legal name or as a registered pseudonym, the names "United Payment Center Inc." or "Wineland & Associates."

https://www.pulseportal.com/selectStateAndBoard.do last accessed April 15, 2021.

48.    Defendant therefore had neither the right nor the legal ability to collect this debt from Plaintiff because Defendant is not a licensed collection agent within the State of Minnesota.

49.    Minnesota law provides in pertinent part:

**332.33 LICENSING AND REGISTRATION.**

Subdivision 1. **Requirement**. Except as otherwise provided in this chapter, no person shall conduct within this state a collection agency or engage within this state in the business of collecting claims for others as defined in sections 332.31 to 332.44, without having first applied for and obtained a collection agency license. A person acting under the authority of a collection agency, as a collector, must first register with the commissioner under this section. A registered collector may use one additional assumed name only if the assumed name is registered with and approved by the commissioner.

Subd. 2. **Penalty**. A person who carries on business as a collection agency without first having obtained a license or acts as a collector without first having registered with the commissioner pursuant to sections 332.31 to 332.44, or who carries on this business after the revocation, suspension, or expiration of a license or registration is guilty of a misdemeanor.

Minn. Stat. §§ 332.33.

50.    Minnesota law prohibits unlicensed debt collectors from collecting consumer debts without first being licensed in Minnesota.  Minn. Stat. §§ 332.31-332.44.

51.    Minnesota law prohibits a collection agency like Defendant from communicating with consumers in a misleading or deceptive manner, including the use of unlicensed collectors.

52. Collection agency activities such as those undertaken by Defendant are heavily regulated activities within the State of Minnesota. *Id.*

53. Plaintiff has substantive rights to deal with only collection agents that are licensed, background-checked, bonded, regulated, and registered with the State in Minnesota, and Defendant is none of these.

54. It was illegal for Defendant to use an unlicensed debt collector and engage in this illegal conduct which materially affected Plaintiff's ability to intelligently respond to this collection activity by Defendant.

55. It is a materially false and deceptive debt collection practice for Defendant's employees to hold themselves out as authorized to engage in consumer debt collection within the State of Minnesota when they were not, and it was a violation of Plaintiff's rights under the FDCPA to be treated fairly by debt collectors who comply with state laws regulating their collection activities.

56. It was a harassing, oppressive and abusive debt collection practice for Defendant to falsely represent the legal status of this disputed debt in describing it as a "settlement" and "litigation" thereby falsely implying a potential threat to sue Plaintiff for it. *Freyermuth v. Credit Bureau Servs., Inc.,* 248 F.3d 767, 771 (8th Cir. 2001) (FDCPA is violated when a debt collector threatens litigation on a time-barred debt).

57. The above-described communications and conduct from Defendant toward Plaintiff represent numerous and multiple violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(3), 1692e(5), 1692e(9), 1692e(10),

1692e(11), 1692f, and 1692f(1), amongst others, as well as violations of Minnesota law.

### *Electronic Fund Transfer Act Violations*

58. The Electronic Fund Transfer Act ("EFTA") requires that a merchant like Defendant give a customer like Plaintiff notice of and a method for stopping automated recurring electronic fund transfers from a bank account.

59. Under EFTA, Defendant was required to give Plaintiff a written notice of how Plaintiff could stop the automated payments from Plaintiff's bank account.

60. Defendant failed to provide notice of a method for Plaintiff to stop these automated payments from Plaintiff's bank account for this alleged debt.

61. The failure to provide such notice violates EFTA and its implementing Regulation E.

62. On or about August 17, 2020, Defendant's agents or employees communicated with Plaintiff by telephone and asked for payment on this alleged debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. 1692a(2).

63. During this collection telephone call, defendant solicited and obtained Plaintiff's personal bank account information in order to initiate a series of electronic fund transfers, which were aimed at satisfying this alleged debt, and which were subject to Regulation E and the EFTA.  *See* 12 C.F.R. § 1005.3(b).

64.   Defendant failed to obtain written authorization from the Plaintiff for these electronic fund transfers, as required by, and in violation of, Regulation E and the EFTA. *See* 12 C.F.R. § 1005.10(b).

65.   Defendant failed to provide Plaintiff with a written copy of this authorization for these electronic fund transfers, as required by, and in violation of, Regulation E of the EFTA. *See* 12 C.F.R. § 1005.10(b).

66.   Defendant made multiple electronic fund transfers from Plaintiff's bank account between August 17, 2020, and the present, within the meaning of Regulation E and the EFTA, without having first complied with the requirements of those federal laws. *See* 15 U.S.C. § 1693 and 12 C.F.R. § 1005.10.

67.   Defendant's failure to provide the notices required by the EFTA, prior to instituting multiple electronic fund transfers from Plaintiff's bank account, constitutes a violation of the EFTA, 15 U.S.C. § 1693, and was also an unfair, false and deceptive collection practice in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1), amongst others.

### *Unauthorized Practice of Law*

68.   Minnesota Statute § 481.02 states in pertinent part:

**481.02 UNAUTHORIZED PRACTICE OF LAW.**

Subdivision 1. Prohibitions. **It shall be unlawful for any person or association of persons, except members of the bar of Minnesota admitted and licensed to practice as attorneys at law, to** appear as attorney or counselor at law in any action or proceeding in any court in this state to maintain, conduct, or defend the same, except

personally as a party thereto in other than a representative capacity, or, **by word, sign, letter, or advertisement, to hold out as competent or qualified to give legal advice or counsel, or to prepare legal documents, or as being engaged in advising or counseling in law or acting as attorney or counselor at law**, or in furnishing to others the services of a lawyer or lawyers, or, for a fee or any consideration, to give legal advice or counsel, perform for or furnish to another legal services, or, for or without a fee or any consideration, to prepare, directly or through another, for another person, firm, or corporation, any will or testamentary disposition or instrument of trust serving purposes similar to those of a will, or, for a fee or any consideration, to prepare for another person, firm, or corporation, any other legal document, except as provided in subdivision 3.

Subd. 2. Corporations. No corporation, organized for pecuniary profit, **except an attorney's professional firm organized under chapter 319B**, by or through its officers or employees or any one else … shall to any extent engage in, or hold itself out as being engaged in, the business of supplying services of a lawyer or lawyers; …

[Bold emphasis added.]

69.   Defendant and its collection employees acting on its behalf are not attorneys licensed to practice law in Minnesota and this law firm entity is not registered with the Minnesota Secretary of State.  *See generally*, Minn. Stat. § 319B.03.

70.   Plaintiff could reasonably be misled into believing that Defendant had the right to sue Plaintiff in Minnesota to collect this debt, when it did not.

71.   Plaintiff could reasonably be misled into believing that Defendant was authorized to practice law here in Minnesota, when it was not.

72.   On or about August 14, 2020, Defendant sent a letter into the State of Minnesota to Plaintiff which demanded money for the payment of this debt on attorney letterhead.

73.  By holding itself out as a law firm and engaging in lawyerly collection activities with respect to Plaintiff within the State of Minnesota, Defendant has therefore engaged in the unauthorized practice of law with respect to Plaintiff and is therefore liable for actual damages, attorney's fees, and costs.

74.  The collection activities undertaken by Defendant without first having properly licensed this entity as a foreign law firm under Minnesota law constitutes the unauthorized practice of law in violation of Minn. Stat. § 481.02, Subd. 1.

75.  Defendant is also not licensed to collect debts within the State of Minnesota, even though it could have obtained a collection agency license from the Minnesota Department of Commerce.

76.  The transmission of these telephone calls and collection letter to Plaintiff by Defendant suggesting that these communications were from a lawyer and a law firm, authorized to engage in the practice of law within Minnesota, when it was not, constitutes the unauthorized practice of law with respect to Plaintiff in violation of Minn. Stat. § 481.02, Subd. 1, and Defendant therefore is liable for Plaintiff's actual damages, attorney's fees, and costs.

77.  It was an independently false and deceptive debt collection practice by Defendant to state, suggest, or imply that it was in fact authorized to practice law within the State of Minnesota when it was not.

78.  The debt collection activities within the State of Minnesota by Defendant, an unlicensed attorney, were actions done in violation of numerous and multiple

provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 1692e(2), 1692e(3), 1692e(5), 1692e(9), 1692e(10), and 1692f, amongst others.

### *Violations of the Federal Drivers Privacy Protection Act ("DPPA")*

79.   Upon good faith information and belief, in connection with efforts to collect an alleged debt from Plaintiff, Defendant and its employees obtained and used personal information regarding Plaintiff from various internet skip-tracing databases, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC, and others.

80.   The databases used by Defendant were derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act.

81.   Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA.

82.   Furthermore, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

83.   The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

84.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.
>
> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

85.    The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

86.    The DPPA further states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

87.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained. 18 U.S.C. § 2721(b).

88.    To establish a violation of the DPPA, a plaintiff must show that a defendant (1) knowingly (2) obtained, disclosed or used personal information, (3) from a motor vehicle record, (4) for a purpose not permitted. *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015).

89.    Remedies for a DPPA violation include "actual damages, but not less than liquidated damages in the amount of $2,500;" punitive damages for "willful or reckless disregard of the law;" attorneys' fees and litigation costs; and appropriate preliminary and equitable relief. 18 U.S.C. § 2724(b).

90.    Plaintiff owns and has registered licensed motor vehicles within the State of Minnesota under his name, the information about which is a "motor vehicle record" as that term is defined by 18 U.S.C. § 2725(1)("motor vehicle record" means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles).

91.    Plaintiff possesses a Minnesota Driver's License whose personal information the information about which is a "motor vehicle record" as that term is defined by 18 U.S.C. § 2725(1).

92.    Defendant did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Plaintiff.

93.    Defendant used one or more of these databases to obtain, disclose and use personal information regarding Plaintiff.

94.    Defendant made a false representation to the provider of the database(s) to obtain personal information regarding Plaintiff from Plaintiff's motor vehicle records.

95.    Alternatively, the entity that obtained Plaintiff's personal information from the database and disclosed the personal information to Defendant, made a false representation to the provider of the database to obtain the personal information.

96.  Defendant knowingly obtained, disclosed and used Plaintiff's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

97.  Defendant had no "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Plaintiff's personal information obtained from the database(s).

98.  Defendant did not have Plaintiff's consent, permission, authorization or waiver to obtain their personal information from the database.

99.  A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County*, 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

100.  Defendant, and its employees and agents, each have intentionally and willfully violated the DPPA.

101.  Defendant was aware, or should have been aware, of the unlawful debt collection practices being used by its employees and agents to collect alleged debts.

102.  As an actual and proximate result of the acts and omissions of Defendant and its employees and agents, Plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, embarrassment, frustration, and suffering, for which Plaintiff should be compensated in an amount to be established at trial.

### *Summary*

103.  The above-described collection conduct by Defendant in its efforts to collect this alleged debt from Plaintiff were oppressive, deceptive, misleading, unfair and illegal

-20-

communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA, RFDCPA, DPPA and EFTA.

104.   These collection actions taken by Defendant, and the collection employees employed by Defendant, were made in violation of multiple provisions of the FDCPA, RFDCPA, DPPA and EFTA, including but not limited to all of the provisions of those laws cited herein.

105.   These violations by Defendant were knowing, willful, negligent and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

106.   Defendant's collection efforts with respect to this alleged debt from Plaintiff caused Plaintiff to suffer concrete and particularized harm because the FDCPA, RFDCPA, DPPA and EFTA provide Plaintiff with the legally protected right to be treated fairly and truthfully with respect to any action for the collection of any consumer debt and/or electronic fund transfer.

107.   Defendant's deceptive, misleading and unfair representations with respect to its collection effort were material misrepresentations that affected and frustrated Plaintiff's ability to intelligently respond to Defendant's collection efforts because Plaintiff could not adequately respond to the Defendant's demand for payment of this debt.

### *Respondeat Superior Liability*

108.   The acts and omissions herein of the individuals employed to collect debts by Defendant, and the other debt collectors employed as agents of Defendant who

communicated with Plaintiff as further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant.

109.   The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting consumer debts.

110.   By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, Defendant.

111.   Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the state and federal law in its attempts to collect this debt from Plaintiff.

## **TRIAL BY JURY**

112.   Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## **CAUSES OF ACTION**

## **COUNT I.**

## **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

## **15 U.S.C. § 1692 *et seq.***

113.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

114.   The foregoing acts and omissions of Defendant and its agents constitute numerous

and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*, with respect to Plaintiff.

115. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant herein.

## COUNT II.

## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

### §§ 1788-1788.32 (RFDCPA)

116. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

117. The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the RFDCPA.

118. As a result of Defendant's violations of the RFDCPA, Plaintiff is entitled to any actual damages pursuant to California Civil Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to California Civil Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to California Civil Code § 1788.30(c) from Defendant.

## COUNT III.

## CONVERSION

119. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

120. The elements of conversion are: "(1) the plaintiff has a property interest; and the defendant deprived the plaintiff of that property interest." *Smith v. Lurie*, Civil No. 09-3513 (D. Minn. May 10, 2011) (citing *Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn. Ct. App. 1994)).

121. Plaintiff held a property interest in his personal funds in his bank account.

122. Defendant and its employee collectors deprived Plaintiff of his property interest in his bank account funds by taking those funds from him without the legal right or authority under state and federal law by keeping those funds it thereby converted them to its own purposes and uses.

123. Defendant has not returned or offered to return Plaintiff's funds that it stole from Plaintiff without legal right, consent or permission, through the use of fraud and artifice.

124. The foregoing acts and omissions of Defendant and its employees and agents constitute a conversion of Plaintiff's funds.

125. The measure of damages in a conversion case is "the market value of the property at the time of the conversion, plus interest from that time." *Smith*, Civil No. 09-3513 (citing *Dairy Farm Leasing Co. v. Haas Livestock Selling Agency, Inc.*, 458 N.W.2d 417, 419 (Minn. Ct. App. 1990)).

126.   As a result of Defendant's conversion, Plaintiff is entitled to damages in an amount based upon the irreplaceable value of each item to Plaintiffs, plus interest from the time of Defendant's conversion from each Defendant herein.

## COUNT IV.

## CIVIL THEFT

127.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

128.   Minn. Stat. § 604.14 provides that:

> A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater.

129.   Defendant repeatedly stole Plaintiff's personal bank account funds through fraud and artifice and without Plaintiffs' knowing permission or consent and kept them.

130.   Defendant has not returned or offered to return Plaintiff's personal bank account funds and thereby having permanently converted them to its own purposes and use.

131.   The foregoing acts and omissions of Defendant and its agents constitute multiple acts of civil theft under Minnesota law.

132.   As a result of Defendant's civil thefts, Plaintiff is entitled to damages in an amount of the bank account funds stolen by Defendant, plus interest, pursuant to Minn. Stat. § 604.14.

## COUNT V.

## FRAUD

133.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

134.   The Minnesota Court of Appeals has held that:

> A contract is voidable if a party's assent is induced by either a fraudulent or a material misrepresentation by the other party, and is an assertion on which the recipient is justified in relying. Restatement of Contracts (Second) § 164(1) (1981).

> A misrepresentation is fraudulent if it is intended to induce a contract and either is known to be false or made without knowledge of whether it is true or false. *Id.* at § 162(1). …

> A misrepresentation is material if it would be likely to induce a reasonable person to manifest his or her assent or the maker knows that for some special reason it is likely to induce the particular recipient to manifest such assent. *Id.* at § 162(2); *see also Pasko v. Trela,* 153 Neb. 759, 763, 46 N.W.2d 139, 143 (1951).

Carpenter v. Vreeman, 409 N.W.2d 258, 260–61 (Minn. Ct. App. 1987).

135.   During the collection communications between August 14, 2020, and the present, Defendant repeatedly and falsely represented to Plaintiff that Plaintiff was obligated to pay this alleged debt when, in material fact, Plaintiff was not.

136.   Moreover, any purported contract that was formed by the August 14, 2020, collection letter was illusory in nature, because Plaintiff had no legal obligation whatsoever to pay any amount of this alleged debt that was beyond the applicable statute of limitations.

137.   Defendant knew that the alleged debt it was attempting to collect from Plaintiff was beyond the applicable six-year statute of limitations for a contract debt under Minnesota law, and that therefore Plaintiff had no legal obligation to pay it, but

Defendant withheld that fact from Plaintiff and instead told Plaintiff that he must pay it.

138.   In its collection phone calls with Plaintiff, Defendant fraudulently induced payments from Plaintiff on this stale debt when it misrepresented that it this was valid debt that Plaintiff could be sued for when it was not.

139.   In its August 14, 2020, letter to Plaintiff, Defendant fraudulently induced payments from Plaintiff on this stale debt when it misrepresented that it would settle this obligation for a series of payments.

140.   Plaintiff's agreement to repay this alleged debt was therefore fraudulently induced by Defendant's deliberate misrepresentation of these material facts, as well as Defendant's omission of other material facts which it had a duty to disclose to Plaintiff.

141.   Defendant's misrepresentations that Plaintiff owed this alleged debt were material misrepresentations of fact because they influenced Plaintiff's judgment and decisions regarding entering into the agreement to repay it in the form of the August 14, 2020 collection letter.

142.   Defendant knew that its misrepresentations to Plaintiff were false at the time Defendant made them.

143.   Defendant's misrepresentations were made intending that Plaintiff would rely on them.

144.   Plaintiff reasonably relied and acted upon Defendant's misrepresentations.

145. Plaintiff was proximately harmed as a direct result of relying on Defendant's false representations and has suffered actual damages in the form of payments made to Defendant in reliance thereon, as well as other damages.

## COUNT VI.

## DECLARATORY RELIEF

146. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

147. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights and duties in that Plaintiff contends that Defendant breached its contract with Plaintiff, and/or no legal obligation to pay this alleged existed, and whereas Defendant disputes this contention and by its conduct contends that such an obligation does exist.

148. Plaintiff desires a judicial determination of Defendant's rights and duties, and a declaration as to the existence or non-existence of the alleged debt, and if it so exists, the extent of the liability of Plaintiff to Defendant, if any.

149. A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain Plaintiff's rights and duties because Plaintiff's personal business affairs are seriously impaired, and Plaintiff is otherwise suffering a financial burden by this unsettled state of affairs.

150. Plaintiff has already suffered from damage by having made payments on this alleged debt and by Defendant's threats to attempts to collect it from Plaintiff and its threat to damage Plaintiff's consumer credit reports.

151.   Declaratory relief is therefore appropriate in order to bring peace to the parties and prevent Defendant from causing further unwarranted and unjust damage to Plaintiff.

## COUNT VII.

## VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT AND REG. E

## 15 U.S.C. § 1693 *et seq*. and 12 C.F.R. § 205 *et seq*.

152.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

153.   The foregoing intentional and negligent acts and omissions of Defendant constitutes numerous and multiple violations of the EFTA and Regulation E including, but not limited to, each and every one of the above-cited provisions of the EFTA, 15 U.S.C. § 1693 *et seq*.

154.   As a result of Defendant's violations of the EFTA and Regulation E, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1693m(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 169m(a)(3) from Defendant.

## COUNT VIII.

## UNAUTHORIZED PRACTICE OF LAW

## MINN. STAT. § 481.02

155.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

156.   Defendant's foregoing acts, as described herein, in attempting to collect this debt by conducting unlicensed telephonic legal collection activities and sending a collection demand letter to Plaintiff in Minnesota, and falsely representing itself as authorized to provide legal services within Minnesota on behalf of its corporate client, was the unauthorized practice of law in Minnesota.

157.   Plaintiff is therefore entitled to declaratory relief pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a, declaring Defendant's actions as described herein to be the unauthorized practice of law in violation of Minn. Stat. § 481.02.

158.   Plaintiff is also entitled to injunctive relief pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a, enjoining Defendant from engaging in the unauthorized practice of law in violation of Minn. Stat. § 481.02.

159.   Plaintiff is also entitled to Plaintiff's attorney's fees, costs of investigation, and costs pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a.

## COUNT IX.

## VIOLATION OF THE DRIVERS PRIVACY PROTECTION ACT ("DPPA")

## 18 U.S.C. §§ 2721-2725 *et seq.*

160.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

161.   The foregoing acts and omissions of Defendant and its agents constitute numerous and multiple violations of the DPPA including, but not limited to, each and every one of the above-cited provisions of the DPPA, 18 U.S.C. § 2721-2725 *et seq.*, with

respect to Plaintiff.

162.    As a result of Defendant's violations of the DPPA, Plaintiff is entitled to (1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and (4) such other preliminary and equitable relief as the court determines to be appropriate, from Defendant herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

- for an award statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant and for Plaintiff;

- an award of actual damages pursuant to California Civil Code § 1788.30(a) in an amount to be adduced at trial, from Defendant;

- an award of statutory damages of $1,000.00, pursuant to California Civil Code § 1788.30(b), from Defendant;

- an award of costs of litigation and reasonable attorney's fees, pursuant to California Civil Code § 1788.30(c), from Defendant;

- for an award of actual damages in an amount based upon the value of all bank account funds stolen from Plaintiff by Defendant, plus interest from the time of Defendant's conversion;

- for an award of actual damages in an amount based upon the value of all bank account funds stolen from Plaintiff by Defendant, plus interest from the time of Defendant's civil thefts pursuant to Minn. Stat. § 604.14;

- for an award of actual damages for fraud that were directly caused by relying on the fraudulent misrepresentations made by Defendant to Plaintiff regarding this alleged debt;

- for a declaratory judgment holding that Plaintiff owes nothing on this alleged debt;

- for a declaratory judgment holding that the contract between the parties is illusory and unenforceable;

- for an award of actual damages pursuant to 15 U.S.C. § 1693m(a)(1) against Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1693m(a)(2)(A) against Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692m(a)(3) against Defendant and for Plaintiff;

- for a declaration that Defendant's actions as described herein to be the unauthorized practice of law in violation of Minn. Stat. § 481.02;

- for an order enjoining Defendant from engaging in the unauthorized practice of law in violation of Minn. Stat. § 481.02;

- for an award of Plaintiff attorney's fees, costs of investigation, and costs pursuant to Minn. Stat. § 481.02 subd. 8, and § 8.31 subdivisions 3 and 3a;

- for an award of actual damages, but not less than liquidated damages in the amount of $2,500 pursuant to the DPPA, 18 U.S.C. §§ 2721-2725;

- for an award of punitive damages upon proof of willful or reckless disregard of the law pursuant to the DPPA, 18 U.S.C. §§ 2721-2725;

- for an award of reasonable attorneys' fees and other litigation costs reasonably incurred pursuant to the DPPA, 18 U.S.C. §§ 2721-2725;

- for such other preliminary and equitable relief as the court determines to be appropriate, from Defendant herein, pursuant to the DPPA, 18 U.S.C. §§ 2721-2725;

- and for such other and further relief as may be just and proper.

Respectfully submitted,

**THE BARRY LAW OFFICE, LTD**

Dated: April 16, 2021

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
2828 University Ave. SE, Suite 202
Minneapolis, Minnesota 55414-4127
Telephone:  (612) 379-8800
pbarry@lawpoint.com

***Attorney for Plaintiff***

## <u>VERIFICATION OF COMPLAINT AND CERTIFICATION</u>

STATE OF MINNESOTA     )
            ) ss
COUNTY OF RENVILLE    )

   Pursuant to 28 U.S.C. § 1746, Plaintiff Darwin Strong verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

        Apr 16, 2021

Executed on  _____   _____

            Darwin Strong (Apr 16, 2021 09:08 CDT)
            Signature

**NOTICE TO PRESERVE ALL DOCUMENTS, RECORDINGS, AND TANGIBLE THINGS, AND ALL ELECTRONICALLY STORED INFORMATION ("Notice")**

To the Defendant(s) Above:

**As you know, this law firm has been retained to represent the Plaintiff in the above captioned matter ("Lawsuit").** As used in this notice, the terms "you" and "your" refer to the Defendant(s) above-named and their predecessors, successors, parents, subsidiaries, divisions and affiliates and its respective officers, directors, agents, attorneys, accounts, employees, partners, contractors and other persons occupying similar positions or performing any functions on behalf of Defendant.

**My client respectfully demands that you preserve all recordings, documents, tangible things and electronically stored information that are in anyway relevant to the Lawsuit.** A civil suit has been commenced against you by my client in the District Court herein, related to the matters described herein.

**You have a legal duty to preserve evidence in this matter.** This duty to preserve evidence exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. The Minnesota Supreme Court has specifically addressed this issue:

> We have said that the spoliation of evidence is the "failure to preserve property for another's use as evidence in pending or future litigation." *Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc.,* 456 N.W.2d 434, 436 (Minn.1990) (quoting *County of Solano v. Delancy,* 264 Cal.Rptr. 721, 724 n. 4 (Cal.Ct.App.1989)). Further, we have recognized that, regardless of whether a party acted in good or bad faith, "the affirmative destruction of evidence has not been condoned." *Patton,* 538 N.W.2d at 119. The duty to preserve evidence[2] exists not only after the formal commencement of litigation, but whenever a party knows or should know that litigation is reasonably foreseeable. *See id.* at 118–19. Breach of the duty to preserve evidence once such a duty arises may be sanctioned, under a court's inherent authority, as spoliation. *See id.* at 118. Here, we specifically reaffirm our rule that custodial parties have a duty to preserve relevant evidence for use in litigation. *Id.* at 116. We also reaffirm our previously stated rule that, even when a breach of the duty to preserve evidence is not done in bad faith, the district court must attempt to remedy any prejudice that occurs as a result of the destruction of the evidence. *Id.*

Miller v. Lankow, 801 N.W.2d 120, 127–28 (Minn. 2011)

**Once a duty to preserve evidence has arisen, the breach of that duty may subject a party to sanctions under a court's inherent authority as spoliation.** "Courts have long afforded redress for the destruction of evidence * * *." Federated Mut. Ins. Co. v. Litchfield Precision Components, Inc., 456 N.W.2d 434, 436 (Minn.1990).

**Much of the information that is subject to disclosure or responsive to discovery in this case may be stored on your current and former computer systems and other media and devices, including personal digital assistants, voice messaging systems, online repositories, telephone recording systems, hard drives and cell phones**. The term Electronically Stored Information (hereinafter "ESI") should be afforded the broadest possible meaning and includes (by way of example and not as an exclusive list) potentially relevant information electronically, digitally, magnetically, optically or otherwise stored as:

- Audio and/or video records of any telephone calls and conversations made related to the events described in the Lawsuit
- digital communications (for example email, voicemail, imaging, scanning, and/or instant messaging);
- email service stores and server information (for example SQL Server, Oracle, Dropbox, Box, lotus, domino.nsf, Microsoft exchange.edb, Google Corporate Gmail, etc.);
- word processing documents (for example Microsoft Word or WordPerfect files and all drafts thereof);
- spreadsheets and tables;
- accounting application data;
- imaging and facsimile files;
- recordings of any conversations with my client;
- phone records of any calls to my client;
- databases (for example Access, Oracle, SQL Server data);
- Contact and relationship data management (for example Outlook, Ask or Interaction);
- Calendar and diary application data;
- online access data (for example temporary internet files, history files and cookies);
- presentations (for example PowerPoint and Corel presentations);
- network access and server activity logs relating to information exchanged between you and third parties, and by you with third parties;
- project management application data;
- backup and archival files;
- letters, documents, or correspondence of whatever kind related to existing loss prevention policies, and changes, updates, alterations made to loss prevention policies for the past three (3) years

**My client hereby demands that you preserve both accessible and inaccessible ESI**. This demand is reasonable and necessary.  Pursuant to the Rules of Civil Procedure, in the event of an eventual civil suit you must identify all sources of ESI you decline to produce and demonstrate why such sources are not reasonably accessible.  For good cause shown in that event, the Court may order production of ESI even if it is not reasonably accessible. Accordingly, you must preserve ESI that you deem inaccessible so as not to preempt the Court's authority.

**Preservation requires your immediate intervention.** You must act immediately to preserve potentially relevant ESI, including, without limitation, information and the earlier of a created or last modified date for ESI concerning any activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand.  Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence.  You must immediately intervene to prevent loss due to routine operations or malfeasance and employ proper techniques and protocols to preserve ESI. Booting a drive, examining its contents or running any application may irretrievably alter the evidence contained therein and constitute spoliation of evidence.

**You are also directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with that litigation hold.** You are further directed to immediately identify and modify or suspend features of your information systems and devices, which, in routine operation, operate to cause the loss of potentially relevant ESI.  Examples of such features and operations that could result in spoliation include:

- purging the contents of email repositories by age, capacity or any other criteria
- using data or media wiping, disposal, erasure of encryption utilities or devices
- overriding erasing, destroying or discarding backup media
- reassigning, re-imaging or deposing of systems, servers, devices or media
- running antivirus or other programs affecting wholesale metadata alteration
- releasing or purging online storage repositories
- using metadata stripper utilities
- disabling server, packet or local instant messaging login
- executing drive or file defragmentation or compression programs
- shredding or other destruction of documents, routine or otherwise

**You should anticipate that your officers, employees, or others may seek to hide, destroy or alter ESI.**  This is not a concern that is unique to you or your organization.

Rather it is simply conduct that occurs with such regularity that any custodian of ESI and their counsel must anticipate and guard against its occurrence. You are directed to preserve complete backup tape sets (including differentials and incrementals) containing recordings, emails and ESI for any person involved in the activity, updates, changes, alterations, or modifications to the information maintained by you related to the events described in the above-referenced lawsuit, through the date of this demand, whether inside or outside of your organization and control. You should also take affirmative steps to prevent anyone with access to your data, systems or archives from seeking to modify destroy or hide ESI.

**As an appropriate and cost-effective means of preservation, you should remove from service and securely sequester the systems, media and devices housing potentially relevant ESI.** In the event that you deem it impractical to sequester those systems, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems identified above is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we demand that you employ forensically sound ESI preservation methods. Failure to use such methods imposes a significant threat of spoliation and data loss. Be advised that a conventional copy, backup or ghosting of a hard drive does not produce a forensically sound image because it only captures active, unlocked data files and fails to preserve forensically significant data.

**You should anticipate that certain ESI, including but not limited to recordings, spreadsheets and databases will be sought in the forms or form in which it was ordinarily maintained, that is in native form.** Accordingly, you should preserve ESI in such native forms and should not employ methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or that make it difficult or burdensome to use that information.

**You should further anticipate the need to disclose and produce system and application metadata and act to preserve it.** System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Metadata may be overwritten or corrupted by careless handling or improper preservation, including by moving, copying or examining the contents of files. As hard copies do not preserve electronic search ability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both the forms.

**We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol if you will furnish an inventory and description of the systems and media to be preserved.** Alternatively, if you

promptly disclose the preservation protocol you intend to employ, perhaps we can now identify any points of disagreement and resolve them.

**A successful and compliant ESI preservation effort requires expertise.**  If you do not currently have such expertise, we urge you to engage the services of an expert in electronic evidence and computer forensics.  Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court.  I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay.  Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay of production of evidence to which we are entitled, that failure would constitute spoliation of evidence.

**Please confirm in writing no later than five (5) business days from the date of this Notice, that you have taken the steps outlined in this Notice to preserve ESI and tangible documents potentially relevant to this pending action.**  If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

If you retain legal counsel with respect to these matters, please direct this Notice to their immediate attention.  Thank you for your anticipated cooperation in this vital matter.

Respectfully submitted,

**THE BARRY LAW OFFICE, LTD**

Dated: April 16, 2021

By:  s/ Peter F. Barry
Peter F. Barry, Esq.
Attorney I.D.#0266577
2828 University Ave. SE, Suite 202
Minneapolis, Minnesota 55414-4127
Telephone:  (612) 379-8800
pbarry@lawpoint.com

*Attorney for Plaintiff*